## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**COALSALES II, LLC, a Delaware**
**Limited Liability Company,**

    **Plaintiff,**

v.

**GULF POWER COMPANY, a Maine**
**Corporation,**

    **Defendant.**                                  **Case No. 06-cv-488-DRH**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

      Plaintiff Coalsales II, LLC (f/k/a Peabody COALSALES Company) filed its Complaint (Doc. 2), seeking declaratory relief concerning a contract it had entered into with defendant Gulf Power Company. Shortly after filing its Complaint, Plaintiff also filed a Motion to Establish its Right to Proceed in this Form and supporting memorandum (Docs. 4 & 5). In response, Defendant filed a Motion to Dismiss, or in the Alternative, to Transfer (Doc. 11), seeking to transfer this case to the United States District Court for the Northern District of Florida. Thereafter, Plaintiff filed its Response (Doc. 16), to which Defendant filed its Reply (Doc. 16). Thus, the Motions have been fully briefed and are now before the Court. Due to the similarities of the issues and relief sought raised by both Plaintiff's and Defendant's Motions

(Docs. 4 & 11), a single Order will suffice. As more explicitly outlined within this Order, the applicable law favors a dismissal of this action.

## II. FACTUAL BACKGROUND

The instant dispute stems from a Coal Supply Agreement ("CSA"), executed by Plaintiff and Defendant on July 1, 1994, whereby Plaintiff agreed to supply and sell coal to Defendant. Although the CSA identified several potential sources (coal mines), it appears that most of the coal was supplied by the Galatia Mine, located in Galatia, Saline County, Illinois. According to Plaintiff, it was notified on December 30, 2005 that the Galatia Mine was forced to permanently close its Millennium Portal Mine and to cease all further mining activities, due to severely adverse mine conditions. Thus, Plaintiff notified Defendant via Defendant's agent, Southern Company, in a letter dated January 23, 2006, that the Galatia Millennium Portal Mine and cessation of mining constituted a *force majeure* event under Section 14 of the CSA. Further, Plaintiff stated it would no longer be able to supply coal to Defendant in accordance with the tonnage and quality specifications required under the CSA, but that its nonperformance was excused as a result of the *force majeure*.

The parties dispute whether the Galatia Mine was an exclusive source under the CSA, as Defendant believes the CSA imposes upon Plaintiff a continuing obligation to supply coal from other sources, regardless of the alleged *force majeure* at the Galatia Mine. Plaintiff and Defendant entered into negotiations to resolve the dispute, which were ultimately unsuccessful. On June 21, 2006, Plaintiff filed its Complaint seeking a declaratory judgment that the events at the Galatia Mine

constituted a *force majeure* under the CSA. The following day, Defendant filed a separate action against Plaintiff for breach of contract, in the U.S. District Court for the Northern District of Florida. The parties currently contest where this matter should be litigated. Plaintiff, obviously, rallies for the action to remain with this Court and also asserts that it is not subject to personal jurisdiction in Florida. In its Motion (Doc. 4), Plaintiff requests that the Court issue an order stating that Defendant is subject to personal jurisdiction in this forum, venue is proper and that the Court will hear Plaintiff's declaratory judgment action. Conversely, Defendant advocates that proper venue instead lies with the Northern District of Florida, and asserts it is not subject to personal jurisdiction in Illinois. Therefore, Defendant seeks for a dismissal of this action or in the alternative, for a transfer to the Northern District of Florida, pursuant to 28 U.S.C. § 1404, so that this action may be consolidated with its lawsuit. Presently, the lawsuit initiated by Defendant for breach of contract against Plaintiff, filed in the Northern District of Florida, has been stayed, pending resolution of the instant matter.

### III. ANALYSIS

Because the issue has been raised as the basis of Defendant's Motion to Dismiss, the Court must first determine whether Defendant is subject to personal jurisdiction in Illinois, otherwise, consideration of Plaintiff's Motion (Doc. 4) and Defendant's alternative request for a transfer of venue would be moot.

#### A. EXISTENCE OF PERSONAL JURISDICTION OVER DEFENDANT

Once a defendant moves to dismiss pursuant to **Federal Rule of Civil Procedure 12(b)(2)**, a plaintiff has the burden of establishing the existence of personal jurisdiction over an out of state defendant. ***Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (internal citations omitted)**. A plaintiff must provide sufficient evidence to establish at least a *prima facie* case of personal jurisdiction. ***Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987)**.

Because this Court sits in the Southern District of Illinois, it will accordingly apply the Illinois statutory law along with federal circuit law to determine whether it has personal jurisdiction over either of Defendants in this case. In fact, Plaintiff must demonstrate that personal jurisdiction over both Defendants in this case complies with (1) the Illinois long-arm statute, (2) Illinois constitutional law, and (3) federal constitutional law. ***RAR, Inc. v. Turner Diesel, Ltd,*, 107 F.3d 1272, 1276 (7th Cir. 1997)**. Moreover, because the Illinois long-arm statute "'permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United

States Constitutions,'"[1] the analysis then becomes a two-prong examination: (1) determining whether the applicable state long-arm statute is satisfied; and (2) whether exercise of jurisdiction is consistent with the constitutional requirements of due process. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citing *RAR,* 107 F.3d at 1276; *Klump v. Duffus*, 71 F.3d 1368, 1371 n.4 (7th Cir. 1995)); *see also FMC Corp. v. Varonos*, 892 F.2d 1308, 1311 n.5 (7th Cir. 1990).

In comporting with the constitutional requirements of due process, "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). As such, a defendant's contacts with the forum state must be such "that maintenance of the suit 'does not offend 'traditional notions of fair play and substantial justice.''" *Id.* at 292 (quoting *Int'l Shoe*, 444 U.S. at 316 (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940))). This standard is applied according to whether the forum state is attempting to assert "'general' or 'specific' jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.'" *RAR, Inc.*, 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*,

---

[1] The Illinois long-arm statute, **735 ILL. COMP. STAT. 5/2-209(c)**, reads:
A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

**466 U.S. 408, 414 n.8 (1984))**. The minimum contacts analysis requires "a showing that the defendant 'should reasonably anticipate being haled into court [the forum state].'" *Hyatt*, **302 F.3d at 716 (quoting** *Burger King Corp. v. Rudzewicz*, **471 U.S. 462, 476 (1985)(quoting** *World-Wide Volkswagen*, **444 U.S. at 297))**.

The parties do not argue whether Defendant is subject to general jurisdiction in Illinois; they only discuss specific jurisdiction, or particularly, Defendant's contacts involving the CSA. Therefore, this analysis will be confined as to whether the exercise of specific jurisdiction over Defendant in Illinois is proper. Specific jurisdiction exists pursuant to the requirements of the Illinois long-arm statute when defendant commits any of the acts enumerated within subpart (a) of the statute or "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." **735 ILL. COMP. STAT. 5/2-209(a)&(c)**. While the parties have extensively briefed the issue of whether Defendant took title to the coal in Illinois and thus, was subjected to personal jurisdiction, the Court finds personal jurisdiction on another basis, evident from the facts of the case.[2]

"Illinois courts have held that despite the lack of physical presence within Illinois, the long-arm statute and due process permit Illinois courts to gain jurisdiction over a person or corporation who enters a contract knowing that it will be performed in Illinois." *Biltmoor Moving and Storage Co. v. Shell Oil Co.*, **606**

---

[2] The Illinois Long-Arm Statute, **735 ILL. COMP. STAT. 5/2-209(a)** finds specific jurisdiction for: (1) The transaction of any business within [Illinois] . . . . It is this particular subsection of the long-arm statute upon which the Court's performance of contract finding is based.

**F.2d 202, 207 (7th Cir. 1979)(collecting Illinois cases)**. In determining whether a contractual relationship between the parties was sufficient to establish personal jurisdiction in Illinois over Defendant, the Court may consider the following: (1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was executed; and (4) where performance under the contract was to take place. *Vitron Ltd. P'ship v. Program Data Inc.*, **759 N.E.2d 186, 193 (Ill. App. Ct. 2001)(citing *Ideal Ins. Agency, Inc. v. Shipyard Marine, Inc.*, 572 N.E.2d 353 (Ill. App. Ct. 1991))**. Personal jurisdiction based on the performance of a contract in Illinois does *not* also require that party to have been physically present in Illinois. ***Biltmoor*, 606 F.2d at 207 (finding party was subject to personal jurisdiction in Illinois where contract was performed in Illinois through that party's agent)**.

In this case, the original CSA contemplated the Galatia Mine in Galatia, Illinois as a source of coal for Plaintiff to obtain in order to supply to Defendant (*see* Doc. 5, Ex. 2 - CSA, §§ 6.04 & 6.05). In later amendments to the CSA, the Galatia Mine was identified as the primary source or source of coal supply.[3] The majority of coal supplied to Defendant under the CSA was from the Galatia Mine for what appears to be a period spanning over more than ten years. The amendments to the CSA, reflected in several letters exchanged between the parties, make it evident that

---

[3] The parties have identified three such instances of relevant amendments to the CSA: (1) January 15, 1998 Letter of Agreement between the parties (*see* Doc. 15, Ex. 3); (2) January 29, 2003 Letter of Agreement between the parties (*see* Doc. 15, Ex. 2, pp. 2-4); and (3) May 20, 2005 Letter of Agreement between the parties with incorporated "Term Sheet" (*see* Doc. 15, Ex. 4).

Defendant was aware that the performance of the contract (mining/supplying the coal)[4] was to be performed in Illinois, as the amendments clearly identify the source of coal supply as the Galatia Mine, located in Galatia, Illinois. This was not merely a unilateral act on Plaintiff's part – selecting or changing a supply source without Defendant's knowledge or consent. In fact, the CSA required that any alternative coal supply source be subjected to test burns, in order to determine whether the coal met certain specifications set forth in the CSA. The facts show that these test burns were conducted at Defendant's generation plant in Florida. Clearly, Defendant was well aware of the situs of the contemplated and actual coal supply source.

Given the fact that the CSA was performed in Illinois and also considering the sophistication of the parties, their bargaining power, the amount of coal supplied to Defendant, the duration of this contractual arrangement and the fact that Defendant was completely aware that the situs of the coal supply source was in Illinois, allows this Court to find that Defendant is subject to personal jurisdiction in Illinois for this action (for the majority of coal received under the CSA). **See Viktron, 759 N.E.2d at 195 (finding that substantial performance of a contract over a period of years contemplated in Illinois strongly favors a finding of**

---

[4] The Court realizes that the CSA, being a complex and lengthy corporate contract, called for other types of "performance" that may have occurred (or was contemplated to occur) in other locations besides Illinois. However, the overarching purpose of the CSA was to attain an amount of coal so that Plaintiff could supply it to Defendant. One of the primary coal supply sources contemplated under the original CSA was the Galatia Mine in Illinois. This contemplated source then became the actual source used to supply the majority of coal under the CSA – it was even later reflected in the amendments to the CSA as the primary source. Therefore, the Court believes that when defining "performance" of a contract for purposes of a specific jurisdiction analysis, the supplying of coal from the Galatia Mine is thereby properly construed as the "performance."

**specific jurisdiction under the Illinois long-arm statute)**.

The Court also finds subjecting Defendant to personal jurisdiction does not offend the state or federal guarantees of due process. Through the parties' course of dealings under the CSA, Defendant had sufficient minimum contacts with Illinois whereby it could reasonably anticipate being haled into court here. As the Court has determined Defendant is subject to personal jurisdiction in Illinois regarding causes of action arising from the CSA, Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) (lack of personal jurisdiction), must be denied. However, before contemplating Defendant's alternative request for a § 1404 transfer of this matter to the Northern District of Florida, the Court will first address Plaintiff's Motion (Doc. 4) to determine whether it should hear Plaintiff's action for declaratory judgment.

**B.     PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF**

On June 21, 2006,[5] Plaintiff filed its Complaint for Declaratory Relief (Doc. 2) against Defendant in this Court. Specifically, Plaintiff seeks a declaratory judgment in its favor declaring that "the closure of the Galatia's Millennium Portal Mine due to unexpected, adverse mining conditions constitutes conditions of a permanent *force majeure* event under Section 14 of the [CSA]," and further that Plaintiff is thereby excused and not liable to Defendant "for any damages allegedly

---

[5] A hard copy of the Complaint was filed-stamped as "Received" by the Benton office of the U.S. District Court of the Southern District of Illinois, however, the Complaint was not filed electronically on CM/ECF until June 23, 2006.

resulting from delivery shortfalls occasioned by these *force majeure* conditions . . ." (Doc. 2, p. 9).  The following morning, on June 22, 2006, Defendant then filed a Complaint for Breach of Contract (the CSA) against Plaintiff in the U.S. District Court for the Northern District of Florida (*see* Doc. 11, Ex. D - Def.'s Compl.).  Simply stated, Defendant believes that Plaintiff has a continuing obligation to supply coal under the terms of the CSA, regardless of the alleged *force majeure* event at the Galatia Mine.

The Court acknowledges that it has discretion to decline to hear an action for declaratory judgment, regardless of whether proper jurisdiction exists. ***Tempo Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987)(collecting cases)**.  In this case, the current point of contention is whether Plaintiff's action should be allowed to remain with this Court, whether it should be dismissed, or whether it should be transferred pursuant to 28 U.S.C. § 1404 to the Northern District of Florida, so that it may be consolidated with Defendant's Complaint.  Aside from the issue of personal jurisdiction, the parties have briefed the issue of the first to file doctrine.  Plaintiff beat Defendant to the courthouse by a day and claims that for this reason, coupled with certain jurisdictional and convenience of venue reasons, its action should remain here.  Defendant, however, argues that the first to file doctrine is not adhered to when the first filing was done in anticipation of a lawsuit, as is allegedly the case here.  Yet, consideration of case filing chronology is but a sub-issue within the analysis framework for whether the Court should hear Plaintiff's Declaratory Judgment Complaint.

Under the Declaratory Judgment Act, federal courts may render judgment only where there is an "actual controversy." **28 U.S.C. § 2201;** ***Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995)**. In other words, there must be action on the defendant's behalf which causes the plaintiff to reasonably apprehend being sued if the plaintiff continues the problematic conduct at issue. Further, a plaintiff's reasonable apprehension must exist at the time the declaratory action is filed. ***Id.* (citing *Int'l Harvester*, 623 F.2d 1207, 1210 (7th Cir. 1980))**. Thus, declaratory relief is sought for the purposes of "'clarify[ing] and settl[ing] the legal relations at issue' and to 'terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.'" ***Tempco*, 819 F.2d at 749 (quoting Borchard, *Declaratory Judgments* 299 (2d ed. 1941))**.

As ***Tempco*** illustrated, there are generally two scenarios of when a plaintiff should seek declaratory relief:

> (1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e., a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.

***Id.***

Nevertheless, even if the Court were to find that Plaintiff's Complaint meets the "actual controversy" requirement under the Act, it still "may properly refuse to grant declaratory relief for prudential reasons." ***Trippe*, 46 F.3d at 627 (citing *Int'l***

*Harvester*, **623 F.2d at 1217**).  A survey of case law in this regard largely involve disputes regarding intellectual property, but as the facts of many cases otherwise mirror the instant dispute, the Court finds the law of those cases analogous, with ***Tempco*** being a seminal case regarding the issue at hand.

In ***Tempco***, the Seventh Circuit affirmed a district court's dismissal of a declaratory judgment action where the plaintiff sought a declaration that its use of the trademark, which used the greek letter omega, did not infringe upon the defendant's trademark.  ***Tempco*, 819 F.2d at 750**.  The defendant had actually filed an infringement suit in another federal district court four days after the plaintiff filed its declaratory judgment action.  ***Id.* at 747**.  The Seventh Circuit, reviewing *de novo*, found that the plaintiff's suit for declaratory relief was of the first scenario (where the controversy has ripened to a point where one of the parties could invoke a coercive remedy), that is, until the defendant filed its infringement suit four days later.  Finding that the defendant was not merely "continually accusing" the plaintiff, but instead, had promptly filed its infringement suit, the Seventh Circuit found "a declaratory judgment would serve no useful purpose and was properly denied."  ***Id.* at 749 (citing *Int'l Harvester*, 623 F.2d at 1218; *Cunningham Brothers v. Bail*, 407 F.2d 1165, 1169 (7th Cir.),** *cert. denied*, **395 U.S. 959 (1969))**.

Unavailing to the Seventh Circuit was the fact that the plaintiff had been first to file its declaratory judgment action, as such did not automatically award the "winner of the race to the courthouse" the ultimate "prize" of choosing the forum.

*Id.* at 749-50 (acknowledging that the Seventh Circuit "has never adhered to a rigid 'first to file' rule")(internal citations omitted). *Tempco* found suits filed in anticipation of impending litigation improper, as these suits would only serve to misconstrue the "wholesome purpose" of the Declaratory Judgment Act. *Id.* (citing *Am. Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 619 (7th Cir. 1939)).

Indeed, *Tempco* has been followed by many cases. *See, e.g., Trippe*, 46 F.3d at 629 (finding district court did not abuse its discretion when it dismissed a declaratory judgment count of the plaintiff's claim when a similar trademark infringement action was later filed by the defendant); *Champion Lab., Inc. v. Burch*, No. 06-cv-4031-JPG, 2006 WL 3370174 at *2 (S.D. Ill. Nov. 21, 2006)(Gilbert, J.)(first to file presumption overridden when the plaintiff's suit filed in anticipation of the defendant's mirror-image suit); *Barrington Group, Ltd. v. Genesys Software Sys, Inc.*, 239 F. Supp. 2d 870, 874 (E.D. Wis. 2003)(stating that "[p]ursuant to its inherent power, a court may dismiss the second-filed action to avoid duplicative litigation"); *Eli's Chicago Finest, Inc. v. The Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 907-08 (N.D. Ill. 1998)(finding that the plaintiff's declaratory suit, filed five days before the defendant's nearly identical trademark infringement suit, was anticipatory and therefore would not warrant the first to file rule and thereby dismissed the plaintiff's suit); *Successories, Inc. v. Arnold Palmer Enterprises, Inc.*, 990 F. Supp. 1044, 1046 (N.D. Ill. 1998)(finding that the defendant's subsequently-

filed infringement action obviated the need for plaintiff's declaratory judgment action and therefore dismissal was warranted); *Associated Mills, Inc. v. Regina Co., Inc.*, 675 F. Supp. 446, 448 (N.D. Ill. 1987)(finding that the plaintiff's anticipatory filing of a declaratory judgment action "amounted to a preemptive strike," thereby "distort[ing] the purpose of a declaratory judgment by using it as a vehicle to secure a forum of its own choosing"). The instant dispute, though not involving the issue of trademark infringement, is akin to the facts of *Tempco*. Further, courts have since found *Tempco* "'applies to declaratory judgment actions designed to pre-empt not only infringement suits, but other lawsuits as well.'" *Budget Rent a Car Corp. v. Miljack, Inc.*, 760 F. Supp. 135, 137 (N.D. Ill. 1991)(citing *Natural Gas Pipeline v. Union Pacific Resources*, 750 F. Supp. 311, 314 (N.D. Ill. 1990); *CNA Financial Corp. v. Home Indemnity Co.*, 703 F. Supp. 759 (N.D. Ill. 1989)).

Plaintiff, in this case, notified Defendant of the *force majeure* event at the Galatia Mine via a letter dated January 23, 2006. Thereafter, the parties entered into discussions to attempt a resolution of the dispute: Plaintiff believes it has no further obligation under the CSA to supply Defendant with coal due to the *force majeure*, whereas Defendant believes Plaintiff remains obligated to provide coal from alternate sources. From the parties' briefs, these settlement discussions lasted through early summer of 2006. In early June, Defendant claims it became apparent the parties would not reach an agreeable settlement, but negotiations continued (Doc.

11, pp. 2-3). While the parties were still in negotiations, according to Defendant, Plaintiff filed its Complaint. Plaintiff contests Defendant's assertion that it intentionally deceived Defendant. Instead, Plaintiff states that the parties' settlement discussions had "broken down" long prior to the filing of its suit (Doc. 15, p. 11). Rather than being anticipatory in nature, Plaintiff believes its filing was made in good faith.[6]

Regardless of the existence of good faith, the Court finds that Plaintiff's declaratory judgment suit was anticipatory in nature, as it was clear the parties were disputing the issue of whether Plaintiff had breached the CSA, negotiations were not going well and future litigation initiated by Defendant was therefore looming. Defendant's suit for breach of the CSA will involve the same parties and issues as the instant litigation. Moreover, Defendant's suit pending in the Northern District of Florida obviates Plaintiff's need for declaratory relief. Plaintiff's claims of *force majeure* to excuse performance and liability under the CSA will likely serve as affirmative defenses to Defendant's suit. Plaintiff, likewise, can contend the exercise of personal jurisdiction in Florida by filing the appropriate motion in Defendant's

---

[6] The parties further dispute the fact of whether Defendant received notice of Plaintiff's suit before filing its breach of contract suit the following morning. The Court finds that neither party is completely blameless. While Plaintiff may have filed its suit during the time Defendant believed the parties were still negotiating, Defendant admittedly acted in similar fashion, as Defendant fails to note that this "assumption" of ongoing negotiations somehow ceased prior to when Defendant filed its breach of contract suit the very next morning. Therefore, either Plaintiff first broke the litigation armistice by shooting its declaratory judgment action over the bow, whereby Defendant knew and retaliated by filing its own suit the next morning **or** Defendant intended to be one to breach the parties' "negotiations tryst," unaware Plaintiff had already beat it to the punch. So the Court believes the playing field is leveled in this instance, as far as good faith filings are concerned.

suit.

Regardless of the fact that this Court deems it has personal jurisdiction over Defendant in this matter, because federal courts must act with prudence to preserve judicial economy, this Court, in its discretion, hereby dismisses Plaintiff's Complaint for declaratory relief, finding Defendant's suit obviates the need for the declaratory judgment Plaintiff seeks. ***See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)("As between federal district courts . . . the general principle is to avoid duplicative litigation")**. With this Order, the Court does *not* make a finding regarding whether Plaintiff is subject to personal jurisdiction in Florida or where proper venue lies.

## IV. <u>CONCLUSION</u>

As the Court finds that personal jurisdiction over Defendant in this forum exists with respect Plaintiff's action, Defendant's Motion to Dismiss Based on Lack of Personal Jurisdiction, pursuant to Rule 12(b)(2) (Doc. 11), is hereby **DENIED**. Defendant's alternative request for a Transfer of Plaintiff's suit, pursuant to § 1404, to the U.S. District Court for the Northern District of Florida to be consolidated with Defendant's pending suit, is also **DENIED**. Instead, the Court addresses its ruling in regard to Plaintiff's Motion to Establish Its Right to Proceed in this Forum (Doc. 4), which requests the Court to hear its suit for declaratory judgment. As the Court, aligning itself with the legal precedence established by ***Tempco***, finds that Plaintiff's declaratory judgment action is obviated by Defendant's

suit for breach of contract and therefore declines to hear Plaintiff's action, it hereby **DENIES** Plaintiff's Motion (Doc. 4). Accordingly, Plaintiff's Complaint (Doc. 2) is **DISMISSED**.

    **IT IS SO ORDERED.**

Signed this 23rd day of February, 2007.

                                      /s/       David   RHerndon
                                      **United States District Judge**